NORWEGIAN EVANGELICAL LUTHERAN BETHLEHEM CONGREGATION v. UNITED STATES FIDELITY & GUARANTY COMPANY and Another.[1]

August 1, 1900.

Nos. 12,048—(226).

Contractor's Bond—Change in Work—Release of Surety.

A provision in a bond executed by a surety company for and in behalf of a building contractor construed. *Held*, that a departure from the

[1] Reported in 83 N. W. 487.

terms of the building contract as to changes and alterations in the plans and specifications did not operate to release or discharge the surety, unless such changes and alterations increased the cost of the building in a sum exceeding $300.

### Same—Evidence.

It was error to refuse to allow counsel for defendant surety company to introduce evidence tending to show that by means of such changes and alterations, without its consent, the cost of the building was increased in a sum exceeding $1,100.

### Religious Corporation—Doctrine of Estoppel.

On principle and authority, a religious corporation must be governed by the same equitable doctrines as to ratification, acquiescence, and estoppel as a private civil corporation. The members of such a society may approve and ratify the unauthorized acts of a so-called building committee, to which has been confided certain duties in reference to a church building in course of erection. Whether there was such approval and ratification in the case at bar was a question for the jury.

Action in the district court for Hennepin county to recover $2,500 and interest against defendant William Siegmann, as principal, and against defendant company, as surety, on a bond, and the additional sum of $822.05, with interest, against defendant Siegmann thereon. The case was tried before Harrison, J., who directed a verdict in favor of plaintiff and against both defendants for $2,629.38, and against defendant Siegmann for the additional sum of $491.22. From an order denying a motion for a new trial, defendant company appealed. Reversed.

*Cobb & Wheelwright,* for appellant.

Religious corporations are governed by the same rules that control private civil corporations. The equitable doctrine of estoppel, ratification and acquiescence apply with the same force to trustees and members of religious societies as to directors and stockholders in the ordinary civil corporations. 20 Am. & Eng. Enc. 774. Robertson v. Bullions, 11 N. Y. 243, 251; Trustees of East Norway Lake N. E. L. Church v. Froislie, 37 Minn. 447, 451; Trustees v. Cox, 78 Ill. App. 219; Roman Catholic v. O'Leary, 24 Colo. 228; Scott v. Trustees, 50 Mich. 528; Sherman v. Fitch, 98 Mass. 59; Scott v. Middletown, 86 N. Y. 200; Martin v. Webb, 110 U. S. 7; 3 Thompson, Corp.

81 M.—3

§§ 3691, 5298–5300, 5308, 5312. The ratification of these changes by the society was of such positive and unequivocal character that it should have been left to the jury to say whether or not the building committee was authorized to make other changes. Anderson v. Johnson, 74 Minn. 171; 20 Am. & Eng. Enc. 864. The purpose of the clause in respect to directing alterations was to prevent changes or alterations on mere suggestion without fixing their extent, and to avoid controversy and litigation as to what were extras and their value. Stillman v. Wickham, 106 Iowa, 597. Any departure from a building contract relieves the surety, no matter whether such departure is for his benefit or not. Simonson v. Grant, 36 Minn. 439; Pioneer Savings & L. Co. v. Freeburg, 59 Minn. 230; Erickson v. Brandt, 53 Minn. 10; U. S. v. Freel, 92 Fed. 299; Beers v. Wolf, 116 Mo. 179; Killoren v. Meehan, 55 Mo. App. 427; Eldridge v. Fuhr, 59 Mo. App. 44; Northern v. Kennedy, 7 N. D. 146.

*Andreas Ueland*, for respondent.

COLLINS, J.

Plaintiff is a religious corporation organized under G. S. 1894, § 3022, et seq. Defendant corporation is engaged in the business of issuing fidelity and surety bonds. Defendant Siegmann is a contractor who undertook to construct a church building for the plaintiff in accordance with certain plans and specifications. The defendant corporation became his surety upon a bond, the conditions of which were as follows:

"If the said principal shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on his part to be kept and performed according to its tenor, and shall well and truly pay and discharge any and all liens for material furnished or labor performed in the building of said church, whenever and as soon as any such lien is filed, then this obligation shall be void; otherwise, of full force and effect."

It is alleged in the complaint in this action that Siegmann failed to perform his contract in several particulars, that mechanics' liens were filed and established against the church property, and that the plaintiff was compelled to pay something over $2,500 by reason of Siegmann's default. This action was brought to recover upon the

bond, and the defendant corporation defended on the ground that certain changes and alterations had been made in the plans and in the work without proper authority, and not in conformity with the contract requirements, which released it from all liability to the plaintiff. The court below directed a verdict in favor of plaintiff, and the defendant company appeals from an order denying its motion for a new trial.

It is necessary at the outset to consider and construe a certain provision in the surety bond, which reads as follows:

"But a departure from the terms of said contract as to the time and manner of payment of the contract price, and changes in the plans or specifications shall not discharge the surety on this bond, or reduce the liability of the surety. No change, however, shall be made in the plans or specifications which will increase the cost of the building more than $300, without the consent of the surety to such change."

Fairly construed, in connection with a provision in the contract which authorized changes and alterations in the plans and specifications, it is evident that no departure from the terms of the contract as to changes and alterations in the work, without the consent of the defendant surety company, released the latter, unless the cost of the structure was increased in a sum exceeding $300 by reason of such changes and alterations. The language is that a departure from the terms of the contract as to changes and alterations shall not discharge the surety unless such changes and alterations increase the cost in a sum exceeding $300. With this construction of the bond, it becomes immaterial that the changes and alterations were verbally directed to be made, and that the price to be paid therefor was not agreed upon at the time, providing this did not increase the cost of the building more than $300.

But counsel for the defendant company offered to prove that the cost of the changes and alterations in the plans and specifications largely exceeded the sum of $300, and in fact increased the cost in excess of $1,100. Counsel for the plaintiff objected thereto, and the objection was sustained. It appears very clear to us that if these alterations and changes were made by authority, or if in any manner plaintiff became bound to pay for the same, the objection should not

have been sustained. This view must follow from our construction of the bond. It would seem, from an examination of the case, that the objection was sustained for the reason that the defendant corporation failed to show that these alterations and changes were ordered by the board of trustees, as the officers of the church, and that the court held this necessary before the plaintiff could be compelled to pay the cost thereof.

Prior to the making of the contract a building committee was appointed by the congregation, and this committee seems to have had the plans, specifications, and the work entirely under its supervision and control. It reported from time to time, and quite in detail, to the assembled congregation. The trustees of the plaintiff do not seem to have acted, except in the formal execution of the contract, as required by law. An examination of the record failed to show that the trustees at any time reported to the congregation, or were consulted in any manner. A frame church was first decided upon, plans and specifications prepared therefor, and the building committee reported to the congregation as to its cost, and also as to the feasibility, and additional expense and cost, of veneering this frame church with brick. At a meeting of the congregation held in May, 1898, the committee submitted the proposition of building with stone, and was authorized to adopt such changes as might be required to adapt the plans to a stone building, and from that time on the entire supervision of the work seems to have been in the hands of this committee. It further appears from what occurred at the meetings that the congregation so understood it. Later on, when defendant Siegmann was compelled to abandon the work, this building committee made a written report to the congregation, in which the fact that alterations had to be made, on account of the change to stone, which had increased the cost, was fully stated. Some of these changes were particularized and the cost specified in that report, and the whole thereof was added to the minutes of the meeting. No objection was made, and it is fairly to be inferred from what was done that the congregation ratified and approved all of the changes which the committee reported had been made necessary by the adoption of the plans and specifications for a stone church, instead of a frame one. It is ob-

vious from what transpired that the congregation supposed the building was being constructed under the supervision of this committee.

On principle and authority, religious corporations must be governed by the same rules that control private civil corporations. The equitable doctrine of ratification, acquiescence, and estoppel applies with the same force to members of a religious society as to stockholders in an ordinary civil corporation. A religious society or organization authorized by law to build its church has power to direct its trustees or a committee of its members to supervise and control the work. It may put the entire matter into the hands of its board of trustees, or into the hands of a so-called building committee. If the board or committee act without preliminary direction or authority in any particular manner, no reason exists why there cannot be a full, complete, and binding ratification and approval by the congregation of these acts. There certainly can be no distinction made in this respect between a religious corporation and one of the ordinary civil character. Of course, ultra vires acts of such a board or of a committee stand on the same footing as the ultra vires acts of church members or other officers or agents. Such acts do not bind the corporation unless it ratifies and approves the same, or unless the corporation, through its members, has assumed such a position in respect to them as to be equitably estopped from asserting the original want of authority. They stand as nullities, so far as the corporation is concerned, unless they have been ratified and approved directly or by implication by the members, or the latter have assumed such a position in respect to the same as to be equitably estopped from repudiation. Assuming such a position amounts to ratification, approval, and adoption of the unauthorized act. It must not be forgotten that under the statute (section 3029) the trustees act, when erecting church buildings, in accordance with the directions of the society or congregation.

To the extent of changes and alterations in a sum not exceeding $300 in value, the terms of this contract as to the necessity of written directions, and that the cost thereof be agreed upon, were inapplicable. But if such changes and alterations, made without consent on the part of the defendant, exceeded that sum, the defendant

was entitled to show it. And, as before stated, the members of plaintiff society might approve, ratify, and adopt by their conduct the previously unauthorized acts, if such they were, of its building committee, by failing, when informed of the same, to disavow and disaffirm. Whether in this instance there was an approval and adoption was for the jury. It was error on the part of the court below to refuse to allow the defendant corporation to show that the changes and alterations ordered by the committee, and made by the defendant Siegmann, largely exceeded in value the sum of $300. A new trial must be had for this error, and it is therefore unnecessary to consider other questions raised by the appeal.

Order reversed, and a new trial granted.