NORWEGIAN EVANGELICAL LUTHERAN BETHLEHEM CONGREGA-
TION v. UNITED STATES FIDELITY & GUARANTY
COMPANY and Another.[1]

May 24, 1901.

Nos. 12,493—(90).

### Surety Bond—Increase of Cost of Building.

A provision in a surety bond, to secure fulfilment of a contract to
erect a church that alterations increasing its cost $300 are allowed re-
stricted permissible changes in the plans to that amount, and, if such
changes increased the cost to a larger sum, such changes would consti-
tute a departure from the contract, and would release the surety com-
pany; following previous decision of this case in 81 Minn. 32.

### Additional Stone Work.

*Held,* further, that, under the evidence in this case, certain resurfacing
of the stone work on the walls of the church did not constitute a change
or alteration in the contract or plans, for the reason that it was not
demanded as a change by the owner of the building, but was required
as a duty, under a proper construction of the contract, and was ac-
quiesced in by the contractor as his own interpretation of the meaning
of the plans and specifications.

### Release of Surety.

In the construction of the church building, certain additional cost to
the amount of $300 was incurred, which was not demanded by the owner
of the building, and, under the facts disclosed, did not constitute such a
change or alteration as relieved the surety company from the obligations
of its bond.

Action in the district court for Hennepin county to recover
$2,500, and interest, from defendant William Siegmann, as princi-
pal, and defendant company, as surety, upon an indemnity bond.
The case was tried before Brooks, J., who directed a verdict in
favor of plaintiff against both defendants for the sum demanded.
From a judgment entered pursuant to the verdict, defendant com-
pany appealed. Affirmed.

[1] Reported in 86 N. W. 330.

*Cobb & Wheelwright,* for appellant.

A surety has the right to stand upon the literal and strict terms of his contract and to assume that such contract shall not be extended by implication nor as a consequence of what others may do in matters of which he has no notice. Cushing v. Cable, 48 Minn. 3; Simonson v. Grant, 36 Minn. 439; Pioneer Sav. & L. Co. v. Freeburg, 59 Minn. 230; U. S. v. American B. & T. Co., 32 C. C. A. 420; U. S. v. Freel, 92 Fed. 299, 301. It must be assumed that the building committee had knowledge of the refacing, which was not called for in the contract, because it was being done under the very eyes of the members of the committee. Scott v. Middletown, 86 N. Y. 200. If the condition of the brownstone was such that under the terms of the contract it could not have been used without changing its face, then surely what Siegmann did to the face would constitute a "change." When the contract provides that the agreement for changes must be in writing, alterations made pursuant to verbal directions, without the surety's consent, release him. Stillman v. Wickham, 106 Iowa, 597; Beers v. Wolf, 116 Mo. 179; Killoren v. Meehan, 55 Mo. App. 427; Eldridge v. Fuhr, 59 Mo. App. 44; Northern v. Kennedy, 7 N. D. 146.

*John Lind* and *A. Ueland,* for respondent.

LOVELY, J.

This case has been in this court once before (81 Minn. 32, 83 N. W. 487), and comes here at this time upon appeal from a judgment in plaintiff's favor. Plaintiff is a religious corporation organized under G. S. 1894, § 3022, et seq. Defendant is engaged in the business of issuing surety bonds. One Siegmann is a contractor who entered into a written agreement with plaintiff by the terms of which he was to erect for plaintiff a church building in Minneapolis according to plans and specifications. The contract price was $9,042. Siegmann was required to furnish a bond for $2,500, conditioned for his faithful performance of the contract. Such a bond was executed by defendant corporation as surety. The condition of this bond provides,

"That if the said principal shall well, truly, and faithfully comply with all the terms, covenants, and conditions of said contract on

his part to be kept and performed according to its tenor, and shall well and truly pay and discharge any and all liens for material furnished or labor performed in the building of said church whenever and as soon as any such lien is filed, then this obligation shall be void; otherwise, of full force and effect."

Siegmann having failed to perform his contract, mechanics' liens to the extent of $2,541.25 for unpaid materials were filed against the church building, which amount in excess of the contract price plaintiff was compelled to pay; and it is to recover this amount, with other damages, that this action is maintained. The surety company, as a defense, claim a departure from the terms of the building contract.

By a provision in the surety bond, as construed on the former appeal (81 Minn. 32, 83 N. W. 487) changes in the plans and specifications did not discharge the surety, unless the cost of the building was thereby increased more than $300. Upon the second trial changes were shown, some of which plaintiff admitted, but such admitted changes were less than $300. The real controversy here arises over two items of alleged changes. One was for resurfacing the brownstone on the exterior of the building, and the other was for building the front wall two feet higher than called for by the plans. Evidence as to the cost of the resurfacing, which defendant offered to show was $850, was excluded. The trial court took from the jury the question of the higher elevation of the front wall, which it is claimed increased the cost of the building $300, and directed a finding for plaintiff on that issue. After verdict for the plaintiff, judgment was entered thereon, from which the surety company appeals to this court.

Among the provisions of the building contract and specifications under which Siegmann constructed the church are the following requirements, fairly summarized from the specifications, which show that in the erection of the building the contractor was to do the work in a neat and substantial manner, and provide good and suitable materials, to be the best of their several kinds; all work to be delivered, when finished, in a perfect and undamaged state. The contractor was to employ a foreman on the work who should be satisfactory to the church corporation. The contractor

was to use any old material, such as brownstone, range rock, and cut stone, timber, iron, columns, beams, etc., from the salvage of the old Westminster Church, previously destroyed by fire, as, in the opinion of the owners and architects, should be considered fit and suitable. The contractor was to select the best stone for the two street fronts, and was to do all necessary cutting or rejoining. Any cut-stone work that was broken or damaged so as to make it unfit for use was to be replaced by new stone. The fact was established that the stone walls from the old Westminster Church, which were to be used in the new structure, had fallen during a fire, and part had to be taken down. This material was carried to the new site by the contractor, who was proceeding to place it in the new building. The foreman (one Pryts) selected by the contractor, also a member of the church committee, protested against this material being put into the wall of the new church in its then condition, and suggested that it should be refaced. This protest was not in writing, and the foreman did not go further in such remonstrance than to say that, if the old stone was to be used in the new church in its present condition, the church would not accept the building. To these conditions the contractor made no objection, but assented to the claim, went on, and refaced the stone from the old church. This work, defendant claims, added to its cost $850, and insists that it was not required by the contract, and was a change and departure from its terms which relieves the surety company from all liability under its bond. The larger number of defendant's assignments of error rest upon the exclusion of testimony offered to show that the stone in the old church was suitable for use in the new one; the meaning of certain technical terms in the specifications, offered for the purpose of showing that such refacing was not within the contract; the cost of refacing, which was excluded,—as well as certain alleged errors in the charge of the court, to the effect that, under the evidence, the contractor could not ask an allowance for such alleged extra work

The position of the trial court in the exclusion of the evidence and rulings above referred to is best stated in its charge to the jury, as follows:

"It is claimed that after the contractor began to lay up the walls, using the brownstone which had been taken from the Westminster ruins, the foreman informed the contractor, in substance, that the work would not be accepted by the plaintiff unless he surfaced the stone, and that, induced by this, the contractor surfaced the stone. * * * By his own showing, he acquiesced in the claim of the foreman that this work was necessary to be done, in order that plaintiff should accept the work under contract. The evidence would not warrant the conclusion that he expected to receive additional compensation for the resurfacing, or that the foreman intended that the contractor should have pay therefor."

A careful review of the evidence fully justifies the accuracy of this statement of the trial court, and leads to the conclusion that the action of the contractor in the respects stated was entirely voluntary.

Differences of opinion are continually arising between owners and contractors as to the meaning of building plans and specifications, in the practical execution of the work under them. So familiar is this condition that it may be deemed to be the prevailing rule, which is the basis of the usual method for the settlement of such questions by reference to an arbitrator, who is usually an architect. No arbitrator was appealed to for that purpose in this case, but the foreman was agreed upon as the agent for both parties; and it may be conceded that he was authorized to speak for the church in making the remonstrance as to the manner in which the work was being done, and, giving full force to that contention,—did speak for the church when he represented that the work was not being done according to the specifications,—yet his statement in this respect amounted to no more than an expression of opinion under exercise of judgment, not conclusive as to the legal rights of either the contractor or the church, and not demanded as a change, but as a proper fulfilment of the contract. The contractor adopted these views of the foreman, and, in effect, admitted, by his acts, that the work would not be acceptable, and attempted to make it acceptable or according to the contract, thus placing a construction upon it by which he would be bound, and could not recover for such work from the church; hence such practical interpretation of the plans does not come within the provi-

sions which relate to changes. Were the rule otherwise, all differences of opinion arising in the erection of a building as to the meaning of the plans and specifications which are, without fraud, mutually resolved by the owner and contractor, would leave the matter thus agreed upon still open to the guarantor to question whether, in the slightest respect, such interpretation was correct; and the court might in every such case be required, after the work was finished, to set aside the result and reinvestigate the issue without reference to the acts of the parties directly interested, which would defeat the liability of the guarantor in almost every case.

We are unable to see how the fact that the expense caused by the refacing work, even if, upon a proper legal construction of the contract, it were not required, but was done voluntarily, can affect the surety company. The claim that it depleted the resources of the contractor, which worked an injury to the company, is not substantial; for the surety company could have no right to interfere with the discretionary acts of the contractor in favor of the church, or the manner in which he voluntarily disposed of his time or funds, except so far as applicable to the legal relations between himself, the church, and the surety company under the contract. With reference to the claim that the building of the front wall higher increased the cost of the church $300, it may be stated that this condition probably arose from an adaptation of the stone of the old church, which was larger than the new one, to the changed conditions, and was not discovered by the contractor himself until the front wall was partly constructed. There is no testimony in the case to show that it was ordered by the church. Some hearsay evidence to that effect was properly stricken out by the trial court, and the contractor himself did not intend to make a charge for this alleged change until the plaintiff began proceedings against the surety company. This attempt to impose a change in the plans because one was made by the contractor without the consent of the plaintiff cannot prevail, and does not require further discussion.

Judgment affirmed.