GETCHELL & MARTIN LUMBER & MANUFACTURING CO.,
Appellee, v. THE NATIONAL SURETY COMPANY, and PE-
TERSON & SAMPSON, Appellants, and THEODORE L.
EVENS, FISHER BROTHERS, W. J. RIBBLE, A. H. WEEKS,
P. G. PRATT, L. H. KURTZ, LANGAN BROTHERS, U. I.
PATTON, and CHICAGO LUMBER & COAL COMPANY, Ap-
pellees.

Building contract: CONTRACTOR'S BOND: LIABILITY OF SURETIES. Where
1 a building contract reserves the right to make changes in the plans
and specifications, a surety on the contractor's bond is not released
from liability to the obligee by an exercise of the right, even though
a change had been agreed upon but not indorsed on the contract at
the time of the execution of the bond, no wrongful concealment of
the change by the obligee being shown.

Release of sureties. Where a builder's contract provided that upon
2 failure to complete the work, the owner, upon a certificate of aban-
donment from the architect, might terminate the contract and assume
charge himself, the fact that the contract was terminated without
such notice from the architect did not relieve the sureties from lia-
bility on the contractor's bond.

Estoppel. Where a surety on a contractor's bond authorized various
3 payments to the contractor, knowing that a prior payment had been
made in violation of the contract, though in fact due, he was
estopped from claiming a release from liability because of such
unauthorized payment.

Release of sureties. Where a builder's contract did not require an
4 architect's certificate of damage to the owner on abandonment of
the contract, an allowance of damages, in the absence of such cer-
tificate, did not release the surety on the contractor's bond.

*Appeal from Polk District Court.*— HON. W. H. McHENRY,
Judge.

WEDNESDAY, JULY 13, 1904.

THE facts are stated in the opinion.— *Affirmed.*

*Ryan, Ryan & Ryan,* for appellants.

*Clark & McLoughlin, C. C. & C. L. Nourse, J. A. Merritt, J. L. Witmer, Sullivan & Sullivan,* and *R. G. Patton,* for appellee.

WEAVER, J.— Peterson & Sampson, a firm of builders, entered into a written contract to erect a dwelling house in the city of Des Moines for the defendant Theodore L. Evens at the agreed price of $2,800, payable in five stated installments, according to the progress of the work. The performance of this contract by Peterson & Sampson was guaranteed or secured by the bond of the appellant surety company. Excepting in the name of the owner of the building, the bond is identical in form and substance with the bond considered and construed by us in *Getchell & Martin Co. v. McQuaid et al.,* 124 Iowa, 599. The contract is evidently drawn upon a printed form substantially identical with the one used by the parties in the case referred to. In filling the blank, however, the word " *owner* " is written in the space left in the body of the form for name of architects, making the clause read: " The contractors shall under the direction and to the satisfaction of the *owner* architects acting for the purposes of this contract as the agents of the owner," etc. The name " The C. E. Eastman Co. Architects " appears as a heading or prefix to the form, but nowhere appears in the body of the instrument. Just the extent to which this apparent obscurity in the contract differentiates it from the one passed upon by us in the other case we will not undertake to decide, but we think it evident that it was intended to reserve to the owner some greater degree of independence in dealing with the contractors than would be allowed were the names of the architects used in that place. The contract bears date August 8, 1901. Following the signatures there is written, under date of November 6, 1901, an agreement signed by Peterson & Sampson and T. L. Evens, for a change in the kind of wood with

which a certain room was to be finished, for which change the contractors were to receive an additional compensation of $69. Following this modification, but without date, is another signed memorandum of changes in several minor matters of specification, but not altering the substantial identity or character of the building. Peterson & Sampson became indebted to the plaintiff and to several of the defendants for material and labor used in said building, and having failed to pay the claims thus arising, plaintiff began this proceeding to establish its lien upon the property, and to recover upon the bond against the surety company. In this suit the other subcontractors appeared, asserting their several claims for liens, and asking also to recover upon the bond. No less than fifty-six different pleadings and amendments confuse the record, and no good purpose will be served by attempting to rehearse their contents. It is sufficient for present purposes to say that upon trial in the district court several different claims were established as liens upon the property; that the unpaid balance of the contract price left in the hands of the owner after allowing proper credits was ordered applied to the payment of these liens in the order of their priority, and judgment for the unpaid remainder was rendered on the bond against the surety company. The only appeal argued is on behalf of said surety. Most of the important questions here raised have been settled in the *McQuaid Case,* above mentioned, and the discussion thereof need not be repeated or prolonged. There are, however, a few points made which are not necessarily governed by that decision, and of these we will briefly speak.

I. It is said the surety is released because of the changes made in the contract. But the contract, by its own terms, reserved the right of the parties to make changes in the plans and specifications, subject to a corresponding increase or decrease of the price of the building. The surety must be held to have had this reserved right in contemplation at the time it signed

1. CONTRACTOR'S BOND: liability of sureties.

the bond, and it is not in position to complain because the right was exercised. This reservation is not only common, but quite universal, in building contracts, and it is well settled that the defense here raised is not available under such circumstances. *McLennan v. Wellington,* 48 Kan. 756 (30 Pac. Rep. 183); *Hayden v. Cook,* 34 Neb. 670 (52 N. W. Rep. 165); *United States v. Walsh,* 115 Fed. Rep. 697 (52 C. C. A. 419); *Lumber Co. v. Gillard,* 136 Cal. 55 (68 Pac. Rep. 576); *Cowles v. Fidelity Co.,* 32 Wash. 120 (72 Pac. Rep. 1032). It is said, however, that one of these changes, by which the location of a partition wall in the cellar was moved one foot, had been agreed upon and made before the written memorandum was indorsed on the contract, or even before the bond was given, and that this fact was concealed from the surety when the bond was signed. It is not all clear from the record when the change was made, and we think it immaterial. It is not pretended that the owner or subcontractors were guilty of any concealment or deceit in the matter. It was the contractor's business to furnish the bond, and the surety company undertook to assist him therein. The failure of the contractors to disclose the change, however it might affect the relations between them and the surety, could not serve to invalidate the bond in the hands of an obligee guiltless of any wrong in the matter. Baylies on Sureties, page 214. Indeed, it is scarcely conceivable that there was any wrong upon the part of any person in this respect. The contractors could have had no motive to conceal such a trifling and inconsequential change in a single subordinate detail of the plan, and we must give the company the benefit of the reasonable presumption, that a variation of twelve inches in the location of a partition wall would not have been thought worthy of attention had not the exigent search for a defense, long after the fact magnified it into proportions of appreciable magnitude. We concede the binding force of the general rule that the surety is entitled to stand upon the terms of the contract of which he assured the performance; but this rule

does not apply to changes which the contract itself authorizes.

II.   Peterson & Sampson abandoned the.work before it was fully completed, and Evens thereupon served them with written notice reciting that the architects had certified to him the fact of such abandonment, and warning them that, unless they proceeded within three days to complete the building, he would complete it himself at their expense.   Peterson & Sampson did not resume the work, and it was carried to completion by Evens.   It is now objected by appellants that this act on part of the owner released the surety from liability, because it does not appear that the architects did certify such abandonment of the work by the contractors.   The contract provides that if there is a refusal, neglect, or failure of the contractors to perform their agreement, and this fact is certified by the architects to the owner, the latter may, upon three days' written notice to the contractors, assume charge of the work himself.   While the contract provides for its termination by a written notice under such circumstances, it does not provide that the certificate or information from the architects on which the owner may act must be in writing, and the absence of such instrument is therefore immaterial.   The work was in fact abandoned by Peterson & Sampson, and, even if the architects had not notified Evens of the abandonment, he was justified, upon learning the situation, in serving the. notice upon the contractors, and upon their continued neglect to resume the work he could lawfully assume charge of it himself, giving due notice, as he did, to the surety, of the action thus taken.

III.   A release of the bond is also claimed because of certain alleged payments to Peterson & Sampson without the architects' certificate, and other payments made upon the " O. K." indorsement of the architects and of the appellant's assistant secretary and agent, who issued the bond.   It appears that the first payment of $300, due when the foundation of the house was completed, was paid by Evens without a formal certificate.   It is shown,

*(margin notes: 2. RELEASE OF SURETIES.   3. ESTOPPEL.)*

however, that such payment had been fully earned, and that thereafter, with full knowledge of such payment, the appellant's agent continued to " O.K." the accruing bills and claims for labor and materials, and gave written authority to Evens to pay the bills thus indorsed or approved, agreeing that such payments should " in no wise affect the contract or relieve the bondsmen from any liability." In view of these facts it is manifestly too late for the appellant to rely upon this objection, even if such payment would, under other circumstances, operate to discharge the bond. Having acquiesced in the manner in which the business was done, and having in fact taken an active hand therein without objection, and without insistence upon the observance of more technical methods, the surety cannot be heard to say it was thereby released from its obligation to make good the damages arising from the default of its principal in the bond.

IV. It is finally objected that Evens was allowed about $195 damages, and by that sum reduced the amount in his hands applicable to the payment of the subcontractor's claim.

**4. RELEASE OF SURETIES.** The objection is based upon the thought that such damages are not recoverable on the bond without an architects' certificate, and that no certificate was given. The point is not well taken. In the first place, we may say of this provision, as of another above referred to, the contract does not require a written audit or certificate, and its absence would not be fatal to an action on the bond. But there is in evidence what was evidently intended as such writing. It is somewhat informal and obscure, but we think it sufficient.

The decree appealed from is AFFIRMED.