AMERICAN SURETY COMPANY OF NEW YORK, *a Corporation,* v. SCOTT & COMPANY, *a partnership composed of* ROBERT M. SCOTT AND MARY V. SCOTT.

(Filed February 13, 1907.)

1. JURORS  Examinations on Voir Dire—Error Not Preserved, When. Where upon the trial of a cause certain questions are propounded to the jury and objections are made there to and sustained by the court, this court will not investigate in order to determine whether or not such ruling was error, unless the record shows that such jurors were retained to try the cause, and further that the party propounding the question exhausted its peremptory challenges.

2. CHANGE WILL NOT AVOID BOND, WHEN. Where a surety company, for a consideration, enters into a bond for the faithful performance of a builder's contract, where the contract and bond contain a provision that changes may be made in the building at the option of the owners, and that the making of such changes will not avoid the bond, a change made in the foundation of the building, which becomes necessary because of the condition of the ground upon which the foundation is to be laid, which condition of the ground requires that the excavation shall be made deeper so that a foundation can be laid that will support the structure, a change in the construction, placing the foundation

American Surety Co. v. Scott & Co.

at a greater depth than provided by the plans and specifications, when it is shown that the excess of labor and material required by such change is fuly paid out by the owners of the building, and that the building is otherwise constructed according to the plans and specifications, such change is not one which will avoid the bond and release the surety from liability.

3. **SLIGHT VARIATIONS FROM CONTRACT WILL NOT AVOID BOND.** A light departure from the plans and specifications of the work in a builder's contract, without the knowledge of the surety upon the bond, where the alterations are authorized by the contract the performance of which the bond is given to secure and where the surety company is a surety for a consideration, will not release the surety from liability upon the bond.

4. **WHAT DOES NOT AMOUNT TO A CONTRACT FOR EXTENSION OF TIME.** Where a builder's contract contains a provision that in case the building is not constructed within a time agreed upon, the contractors shall pay to the owners the sum of five dollars per day as liquidated damages for all the extra time consumed in the erection of the building, and where the contractors fail to complete the building within the time agreed upon, but after such time continued to work upon the structure with the knowledge of the owners, such extension of the work does not amount to a contract between the contractors and the owners for an extension of the time within which to complete the building, nor will the continuation of the work by the contractors under such conditions release the surety from its liability upon the bond.

5. **NO BREACH OF CONTRACT.** Failure to complete the work of a building within the time specified in the contract where there is a provision in the contract for damages for the extra time consumed in completing the building, where the work is continued with, does not amount to an abondonment of the work, and does not amount to such a default and breach of contract as requires notice, where the notice in the contract is only required in case of an abandonment of the work.

6. **NO VIOLATION OF BOND.** Where the provision of the builder's contract is that on the first and fifteenth days of each month the architect shall make an estimate of all materials and labor grafted into the building, and give the contractors a certificate showing the amount of each estimate, and that the owners shall pay the contractors said amount. less twenty per cent, the twenty per cent. to be held until the building is completed, and where the bond given by the surety for the faithful performance of such contract provides that upon such estimate the owners shall withhold fifteen per cent, until the building is completed, there is no violation of the provisions of the bond by the payment upon estimate of all sums up to the fifteen per cent.

American Surety Co. v. Scott & Co.

7. **SAME.** Where in the builder's contract and bond provision is made that estimates shall be made by the architect on the first and fifteenth days of each month, and that payments shall be made to the contractors according to the estimate, less fifteen per cent, and where the owners, in order to accommodate the contractors in procuring material and labor, advance certain amounts between the periods, at which estimates are made, and where such amounts are taken into consideration and deducted from the amount due at the time of, and under the conditions of, the next estimate, and where such amounts so advanced are applied upon the labor, material, and freights, and where no loss accrues to the surety or contractors by reason of such advances, **Held:** That such advances are not a violation of the contract and will not be held to avoid the conditions of the bond.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*W. F. Wilson* and *H. E. Elder,* for plaintiff in error.

*J. L. Brown* and *Hays, Thorpe & Thorpe,* for defendant in error.

### STATEMENT OF FACTS.

On the 12th of August, 1901, the defendants, Scott and Company, entered into a contract with Lawrence and Cavette, contractors and builders, to construct for them a certain building in the city of Oklahoma City, at a cost of $8,991. The plans and specifications were attached to the contract. The plaintiff in error, to secure the faithful performance of the contract on the part of Lawrence and Cavette, entered into a bond or contract of insurance, in writing, with the defendant in error, by the terms of which said company bound itself in the sum of $3,000, the conditions and provisions thereof being those contained in the contract of insurance and the contract between the parties for the erection and completion of the building.

The contractors proceeded with the building under the contract, and continued with the same until the 30th day of December, 1901, when they refused to further proceed, and abandoned the work.

The owners, Scott and Company, through their agents, and the architect employed for the work, proceeded with the completion of the building, at a cost to them, as alleged, including the payment of claims of mechanics and materialmen, of $2178.39, in excess of the original contract price.

This suit was brought against the contractors and the surety company to recover such excess.   The case was tried to a jury which returned a verdict in favor of the plaintiff for $2,102.15, and judgment was rendered upon such verdict.   Motion for a new trial was filed and overruled.

Opinion of the court by

PANCOAST, J.:   Seven different propositions are contended for as ground of error.   We will notice these in their order.   The first is as to the examination of some of the jurors. Certain questions were asked some of the jurors on their *voir dire*, which were objected to and the objections sustained by the court.   While we think the objections were properly sustained, yet, even if there was error in this regard, it is not preserved in the record.   The questions did not go to the competency of the jurors nor to their qualifications as jurors in this particular case, but, it is claimed, the questions were asked for the purpose of enabling the defendant to intelligently use its peremptory challenges.   In order to preserve such matters for review in this court, it is neces-

sary that the record show that the particular jurors were among the number selected to try the case, and also that the defendant had exhausted its peremptory challenges, for, however erroneous the ruling of the court might be in refusing to allow the jurors to answer certain questions, if the jurors are not finally selected to try the case, the error will be immaterial, and if the complaining party does not exhaust its peremptory challenges, still it cannot be heard to complain.

The next contention is that after the execution of the contract and bond, certain alterations and changes were made in the contract without the knowledge or consent of the surety and without notice to it. Two classes of alterations are alleged to have been made, the first being a change in the foundation of the building, and the second, some minor changes with reference to guttering and the size of bathrooms. As to the first alleged alteration, it is shown that when the excavation for the building was being proceeded with, it was found that a stratum of sand existed beneath the surface, and at a point where the foundation was intended to have been laid, which prevented the construction of the building on such a foundation, and, in order to procure a proper foundation for such a building, it became necessary to excavate further and commence the foundation deeper than was originally intended and provided for in the plans and specifications. When this condition was ascertained, the contractors were instructed to proceed with the excavation to a depth at which a foundation could properly be started, and did so. Upon one side it is claimed that there was a separate contract for this extra excavation and foundation, while on the other it is claimed that no separate contract was made, but that

the contractors were instructed to proceed to a point necessary for a proper foundation, and that the extra expense, whatever it might be, would be paid for. The work was proceeded with. The extra foundation was laid and the building constructed upon the foundation as provided for in the plans and specifications.

There was a clause in the contract which provided that no alterations should be made in the work, except upon the written order of the architct, and when so made, the value of the work added or omitted should be computed by the architect and the amount so ascertained should be added to or deducted from the contract price; and another provision which was that should Scott and Company require any changes, additions or omissions, they should be at liberty to do so, without affecting the bond or making void the contract. Whether or not this extra work of excavation and foundation was ordered by the architect, is not made clear in the record, but, inasmuch as the architect was present, supervising the entire structure, it is fair to presume that the work was done under his orders. It is certainly clearly shown by the record that the cost was computed and paid for, in excess of the contract price. Under the provisions of the contract, no notice of this extra work was necessary to be given to the surety company, but the provision in the contract in this regard is that it should be on the order of the architect, and this evidently for the purpose of keeping a correct account of any extra work so that the cost thereof might be correctly computed.

The other alterations are very slight and immaterial, consisting of a change in the position of the guttering on one

side of the building, and a possible change in the size of the bathrooms.

Counsel for plaintiff in error cite a large array of authorities to uphold the proposition here contended for. We have examined those at our command and find that those holding a contract void because of certain changes made are, many of them, cases where no changes are provided for in the contract, and where the changes made are material ones, or in cases where the surety signs as an accommodation for the contractor, without any consideration. Some of the authorities cited do not support the position contended for by counsel. The material difference between the cases cited and the case at bar, is, first, that the contract specifically provides that changes may be made without avoiding the bond, and, second, that the surety company is an insurer for a consideration. Hence, the doctrine contended for by counsel for appellant can not have much application to the case at bar. One of the cases cited by counsel, *Risse v. Hopkins*, 40 Pac. 904, may be used as an illustration of some of the cases cited. In this case it is held that "A slight departure from the plans and specifications of the work, without the knowledge of the sureties upon the bond, where alterations are authorized by the contract the performance of which the bond was given to secure, will not relieve the sureties from liability upon the bond."

The next contention is that Scott and Company extended the time within which the building was to be completed, without the knowledge and consent of the surety company, or notice to it. The contract contained a provision that the contractors would complete the work comprehended

in the agreement, and have the same ready for acceptance on the 22nd day of November, 1901, and also contained a provision that upon failure to complete the building within the time specified the contractors should pay to Scott and Company five dollars per day as liquidated damages. The contractors did not complete the building within the time provided, but continued the work until a later date. The fact that the contractors proceeded with the work after the date which the contract required for its completion, did not amount to a contract of extension of time; such condition was provided for in the contract and a penalty was provided for a failure to complete the building within the time. There is, therefore, no merit in this contention, and the instruction of the court given under this head is correct.

The next contention is that the obligees in the bond, by the failure to give notice to the surety of any default on the part of the contractors within ten days after the occurrence of such default, released the surety from its obligation. Notice was given to the surety within ten days from the time that the contractors abandoned the work. The failure to complete the work within the time specified in the contract was not such a breach of the contract as required any notice, and was not an abandonment of the work, so that the court properly refused an instruction holding that such failure to complete the work in time was such a default and breach of contract as required notice.

Next it is charged that the owners of the building paid the contractors a sum of money in excess of the sum provided for in the contract and bond. One of the articles of the contract provided that on the first and fifteenth days of each

month the architect should make an estimate of all materials and labor grafted into the building and give to the contractors a certificate showing the amount of such estimate, and that the owners should pay the contractors said amount, less twenty per cent. and that the twenty per cent. should be withheld until the building was completed. In addition to this provision of the contract, the bond provided that the obligees should retain not less than fifteen per cent. of the value of the work performed and materials furnished until the building should be completed. As the work progressed, the estimates were made by the architect, and payments were made withholding fifteen per cent. Now, while it may be conceded that under this provision of the contract the owners of the building might have withheld twenty per cent. yet, if they saw fit to pay a greater amount and withhold only fifteen per cent, as provided by the terms of the bond, the surety cannot complain, for there is no violation of the provisions of the bond. The record also shows that, between the times in which the several estimates were made, certain amounts were advanced by the owners of the building to the contractors, which was applied upon labor, material and freights, the checks therefor being made directly to the parties who held the obligations, but delivered to the contractors and distributed by them, and when the next estimate was made by the architect these advances so made were taken into consideration and deducted from the amount of the estimate, and the remainder less 15 per cent. paid to the contractors. It is contended by counsel that this was a violation of the terms of the contract. No loss occurred, but, as a mere accommodation, to enable the contractors to proceed with the

purchase of material and the employment of men, those advances were made. Certainly, no injury was caused thereby, and we cannot see how it can be construed into such a violation of the contract as would avoid the conditions of the bond. The fact that the checks were made to the parties who held the obligations was a precautionary measure and one which could only inure to the benefit of the surety. It was a provision which would insure the money going to the persons to whom it was due, and prevent the contractors from using it for other purposes, leaving laborers and materialmen to file liens for the amounts due them.

The several instructions given by the court were all in harmony with the views expressed herein, and were, therefore, correct. Those refused were all written upon the theory contended for by counsel, and were, therefore, properly rejected. The record in this case shows that it was very carefully tried, and evidently the jury reached a correct conclusion. There was a loss by reason of the contractors failing to perform their contract. The surety company obligated itself to indemnify the owners against such loss. The loss was properly computed and ascertained, and, by the verdict rendered, the surety company is required to pay the amount which they agreed to pay.

The verdict, therefore, is just and right, and, there being no error occurring at the trial, the judgment of the district court is affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.