## NATIONAL SURETY CO. v. HALEY *et al.*

No. 4506.  Opinion Filed July 25, 1916.

(159 Pac. 292.)

1.  **PRINCIPAL AND SURETY—Excessive Payments on Building Contract—Burden of Proof—Evidence.** Where a building contract made a part of the bond provided that "payments on the work shall be made from time to time as the work progresses upon the architect's certificate that said amounts have become due and at no time until the completion will they be made to exceed 85 per cent. of the value of work finished and in place at the date of each," and where said payments did exceed 85 per cent. of the value of the work finished and in place at the date of each payment, assuming that a compliance with the stipulation was a condition precedent to a right to recover on the bond, **held**, in a suit by the obligee against the surety company, a surety for hire upon the bond, that a failure to perform it will not defeat a recovery thereon **in toto,** but only to the extent defendant has been injured by failure to perform; and that the burden is on the defendant to show the extent of his injury. Evidence examined, and **held,** further, no such injury appearing, that plaintiff was entitled to recover the whole amount of the penal sum of the bond...

2.  **SAME — Building  Contract — Construction — Changes — "If" — "Amount of Money Involved"—"Aggregate."** Where the building contract provided that changes in the plans and specifications might be made without limit or notice to the surety company, when agreed to in writing between the parties thereto, and the bond, for the faithful performance of the contract on the part of the contractor, executed by the surety company as surety upon express conditions therein declared to be precedent to any right of recovery thereon, among other things, provided: "That when the cost of said changes shall in the aggregate amount to a sum equal to 10 per cent. of the penal sum of this bond, no further changes or alterations shall be agreed upon by the principal and obligee until the consent of the company shall first be obtained thereto," in a suit by the obligee against the principal and surety on the bond, contract and bond construed together as one instrument and **held,** that it seems the consent of the surety company to changes in the plans to cost in the aggregate in excess of 10 per cent. of the penal sum of the bond was a condition precedent to the right to make them; but, as the evidence discloses

National Surety Co. v. Haley et al.

that the cost of the changes made did not, in the aggregate, equal said sum, plaintiff was entitled to recover.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by W. P. Haley against George W. Binning and another. Judgment for plaintiff, and defendant National Surety Company brings error. Affirmed.

*Stuart, Cruce & Gilbert,* for plaintiff in error.

*Everest & Campbell,* for defendant in error W. P. Haley.

TURNER, J. On September 22, 1911, in the district court of Oklahoma county, W. P. Haley, defendant in error, sued Geo. W. Binning, as principal, and National Surety Company, plaintiff in error, as surety, to recover on a bond dated December 18, 1909, given to secure the faithful performance of a contract, whereby Binning agreed to erect a building for plaintiff in Oklahoma City within 90 days from the date thereof for $21,500, according to certain plans and specifications made a part of the contract, which was dated December 7, 1909, and made a part of the bond.

The breach of the bond was alleged to be that Binning had abandoned the contract, whereupon plaintiff was compelled to take charge of the building and complete the same at his own expense and at a loss of $9,862.25, for which, after alleging a compliance with all conditions precedent to recover thereupon, he prayed judgment against Binning as principal and against the surety company for $4,300, the full amount of the bond. For answer, the surety company, after general denial and a specific denial of the performance of conditions precedent to a right to

recover, admitted the execution of the bond, and for further defense specifically alleged:

"That many material changes and alterations were made by plaintiff and the defendant Binning in the plans and specifications and in the erection of said building, which were made without the knowledge, consent or approval of this defendant, and that by reason of such changes having been made, without the knowledge, consent or approval of this defendant, the National Surety Company, and its obligation upon said surety bond was absolved and this defendant released from further responsibility thereon."

Binning made default. On trial to the court, there was judgment for plaintiff and against Binning and the surety company, as prayed, and, after motion for new trial was filed and overruled, the surety company brings the case here.

As to the surety company, the judgment is neither contrary to the law nor to the evidence, as contended. On this point the evidence discloses that the bond, after making the contract a part thereof, among other things, provides:

"Now, therefore, the condition of this instrument is such that if the said principal shall well and truly perform the terms and provisions of said contract on the part of said principal required to be performed, then this instrument shall be null and void, otherwise to be and remain in full force and effect: Provided, however, and this instrument is executed by the company as surety upon the following express conditions, which shall be precedent to the right of recovery hereunder. * * * The obligee shall, at the times and in the manner specified in said contract, perform all the covenants, matters and things required to be by the obligee performed; and if the obligee default in the performance of any matter or thing in this instrument, or in said contract agreed or required to be

performed by the obligee, the company shall thereupon be relieved from all liability hereunder. * * * If any changes or alterations by the principal and obligee be made in the plans or specifications for the work mentioned in said contract, the obligee shall immediately so notify the company of such changes or alterations, giving a description thereof and stating the amount of money involved by such changes or alterations: Provided, however, that when the cost of said changes or alterations shall in the aggregate amount to a sum equal to 10 per cent. of the penal sum of this bond, no further changes or alterations shall be agreed upon by the principal and obligee, until the consent of the company shall first be obtained thereto."

The evidence further discloses that on February 18, 1910, and while Binning was at work on the building, plaintiff sent by registered mail to the office of the surety company in New York an itemized list of changes from the original plans which, he wrote the company, had been agreed upon between him and Binning. Some of the 17 items in the list showed changes which added to the contract price $509.58; others showed changes which reduced it $309.40; and others which did not affect it at all. In the list was an item providing for piping gas to the front store room, for two openings for light, and the halls above first floor, "cost not yet ascertained." Another provided for wiring for three electric signs, "cost not yet ascertained"; but it seems the cost of both these items was furnished on a later list. On March 13, 1910, plaintiff sent to the surety company a similar list which, he wrote the company, had been agreed upon between him and Binning, containing 28 items, some of which added to the contract price $40.18, and others which reduced it $36. All of them provided for changes in the plans and specifications; the last item on the list provided for margins on floors of rooms of upper story to be stained, "cost not

ascertained." The cost of this item also was furnished on a later list. On March 5, 1910, plaintiff and Binning entered into an agreement, supplemental to that of December 7th, consisting of 26 items, some of which added to the contract price $452.16, and some deducted therefrom $324.40, and some did not affect it at all, but all provided for changes in the plans and specifications. As defendant does not complain of want of notice of these changes, we presume the same was given. On April 3d Binning quit the contract, after receiving some $18,000 of the contract price of $21,500 for the building, whereupon plaintiff, about June 1st, completed the same, as he had a right to do under the contract, at a cost of $9,862.25 in excess of the contract price, after which he brought this suit; from all of which it is contended that, as the bond is in the penal sum of $4,300, and the increased cost of the changes in the first list of items exceeded 10 per cent. of the penal sum of the bond, the consent of the company thereto as to such excess was not only a condition precedent to the right of plaintiff and Binning to agree to make them, but a condition precedent to plaintiff's right to recover on the bond; and that, as the evidence discloses such consent was never had before the changes were made, plaintiff cannot recover. This contention cannot be sustained.

Standing alone, the changes made were expressly authorized without the consent of any one, save the parties to the contract, by that part of the contract which provides:

"It is mutually understood by the parties hereto that any changes made in the plans and specifications for the foregoing building (shall be binding) if a mutual agreement is made in writing and witnessed (and), the amount of same may be added or deducted, as the case may be

(from the contract price), without in any wise affecting this instrument." (Words in parentheses are ours.)

Which means that any changes when in writing, whether they cost in excess of 10 per cent. of the penal sum of the bond or not, may be made without notice to any one and shall be binding upon the parties to the contract without in any wise affecting "this instrument"— that is, the contract; and, since it is a part of the bond, without affecting the validity of the bond. Incorporated as it was in the bond, this stipulation became and was that of the surety company as well as that of the parties to the contract and evidenced the consent of the company thereto.

In *Woodruff v. Schultz et al.*, 155 Mich. 11, 118 N. W. 579, 16 Ann. Cas. 346, in the headnotes it is said:

"Alterations in a building contract, made by agreement between the principal contractor and the owner, whereby certain provisions of the contract are abrogated and other provisions substituted therefor, will operate to release a surety on the contractor's bond who has not assented thereto. * * *"

Of course, where he has assented, the contrary rule applies and the surety will be bound. This case is ably annotated in volume 16, Ann. Cas. At page 348 the learned author states the rule to be:

"It is well settled that if the contract between the owner and the contractor permits alterations to be made in the work to be done, or if the bond itself permits the alterations, the surety will not be discharged by reason of a material alteration made without his express consent, where such alteration is one contemplated by the terms of the stipulation permitting alterations."

This note cites *American Surety Co. v. Scott et al.*, 18 Okla. 264, 90 Pac. 7. There it was held that where a

surety company for a consideration enters into a bond for the faithful performance of a builder's contract, and the contract and bond contain a provision that changes may be made in the building at the option of the owner, the making of such changes will not avoid the bond. See, also, *Ashenbroedel Club v. Finlay*, 53 Mo. App. 256; *Young et al. v. Young et al.*, 21 Ind. App. 509, 52 N. E. 776; *Schreiber et al. v. Worm*, 164 Ind. 7, 72 N. E. 852; *Lumber Co. v. Surety Co.*, 124 Iowa, 617, 100 N. W. 556; *McLennan v. Wellington*, 48 Kan. 756, 30 Pac. 183; *Consaul v. Sheldon*, 35 Neb. 247, 52 N. W. 1104; *People's Lumber Co. v. Gillard*, 136 Cal. 55, 68 Pac. 576; *Eureka Stone Co. v. First Christian Church*, 86 Ark. 212, 110 S. W. 1042; *United States v. Walsh et al.*, 115 Fed. 697, 52 C. C. A. 419; *McMullen et al. v. United States*, 167 Fed. 460, 92 C. C. A. 96.

And so, we repeat, the changes thus agreed upon might properly have been made pursuant to the terms of the contract construed by itself. And still leaving the parties to the contract to make changes *ad libitum* and without notice, but in modification of said provision in the contract as to notice only, the bond further reads:

"If any changes * * * be made in the plans for the work mentioned in the contract, the obligee shall immediately so notify the company of such changes, * * * giving a description thereof and stating the amount of money involved by such changes."

Now, as "if" means "when" (*State ex rel. Haskell v. Huston*, 21 Okla. 782, 97 Pac. 982), and changes in the plans can be made as well by adding thereto as deducting therefrom (*Rule et al. v. Anderson*, 160 Mo. App. 347, 142 S. W. 358), this provision means that when the obligee and the principal in the bond agree to make additions to or deductions from the work prescribed by the plans, the

obligee shall immediately so notify the company thereof, describing them, and stating the amount of money involved in such changes. And, so far, neither contract nor bond places any limitations on the contracting parties as to the amount of the cost of such changes, but provides only for notice, describing the changes and stating the amount of money involved therein. And by "money involved," as used in that connection, the bond means the amount of money involved in both additions to and deductions from the contract price; as where a door is added at a cost of $50 and another is left off at a cost of $25, the "amount of money involved" means $75. And so we say that, when Haley furnished the surety company the list of items of February 18, 1910, agreed on by him and Binning and so notified the company, he lived up to all conditions precedent to his right to recover thus far denominated in the bond. But the bond, prescribing further conditions precedent, reads:

"Provided, however, that when the cost of said changes * * * shall in the aggregate amount to a sum equal to 10 per cent. of the penal sum of the bond, no further changes shall be agreed upon by the principal and obligee, until the consent of the company shall first be obtained thereto."

Relying upon which it is contended that the cost of the changes agreed upon in the list of February 18th is in excess of 10 per cent. of the penal sum of the bond, and hence the consent of the company thereto, as to such excess, was a condition precedent to plaintiff's right to recover on the bond, and, as such consent was never had, plaintiff cannot recover. Assuming for the moment that the cost of said changes was in amount in excess of 10 per cent. of the penal sum of the bond, it seems that defendant's contention is correct.

*Norwegian, etc., Congregation v. United States Fidelity & Guaranty Co.,* 81 Minn. 32, 83 N. W. 487, was a suit by the obligee against the principal and surety upon a builder's bond, the conditions of which were substantially as here. It was alleged that the contractor failed to perform his contract in certain particulars. The cause was defended on the ground that certain changes and alterations had been made in the plans and specifications without proper consent, as here, and hence the surety was released from liability on the bond. At the close of the evidence the court directed a verdict for plaintiff, and the company appealed. The contract authorized changes as here. The bond, however, provided:

"But a departure from the terms of said contract as to the time and manner of payment of the contract price, and changes in the plans or specifications shall not discharge the surety on this bond, or reduce the liability of the surety. No change, however, shall be made in the plans or specifications which will increase the cost of the building more than $300, without the consent of the surety company to such change."

Construing which the court said:

"Fairly construed, in connection with a provision in the contract which authorized changes and alterations in the plans and specifications, it is evident that no departure from the terms of the contract as to changes and alterations in the work without the consent of the defendant surety company released the latter, unless the cost of the structure was increased in a sum exceeding $300 by reason of such changes and alterations. The language is that a departure from the terms of the contract as to changes and alterations shall not discharge the surety unless such changes and alterations increase the cost in a sum exceeding $300."

But the cause was reversed because the court refused to permit the surety company to prove that the increased

cost of the changes made exceeded $300. After reversal this cause was again tried on that issue alone, and on appeal the court, in the same case, reported in 83 Minn.. 269, 86 N. W. 330, adhered to this· construction of the contract and in the headnotes said:

"A provision in a surety bond to secure fulfillment of a contract to erect a church that alterations increasing its cost $300 are allowed restricted permissible changes in the plans to that amount, and, if such changes increased the cost to a larger sum, such changes would constitute a departure from the contract, and would release the surety company; following previous decision of this case in 81 Minn. 32 [83 N. W. 487]."

*Neuwirth v. Moydell*, 188 Mo. App. 467, 174 S. W. 206, was a suit by an obligee against the principal and sureties on a builder's bond, as here. The defense urged was also substantially the same. Construing together both contract and bond, it was held that although the contract provided that alterations might be made in the contract by the parties thereto, the extent thereof which might be made without the consent of the sureties on the bond was limited by a condition in the bond that the contractor should well and truly perform the contract and any alterations and additions to it, provided they did not exceed $8 in extra costs. Concerning which the court said:

"The case concedes that defendants' sureties on the bond were in no wise notified with respect to the several changes and variations from the original specifications and plans of construction detailed in the contract, and such changes were made between the original parties to the building contract without their knowledge or consent. Because of this it is urged the sureties are d'scharged, and it is entirely clear that this argument must prevail. It is undoubted that there is no implied obligation on the part of the surety that he has undertaken more or other than that expressed in his contract, for it is only to the extent

and in the manner and under the circumstances pointed out in the contract to which he has become a party that he is bound, and not further. Therefore, if the original parties to the contract make changes or alterations which go to vary and alter its terms through substituting other matters for those called for in the contract, so as to destroy its identity in the matter of performance, without the consent of the surety, he is thereby relieved and discharged from the secondary obligation undertaken on the ground that the identity of the contract on which he assumed to respond has been destroyed through the act of the original parties without consulting him. This doctrine is constantly applied in relief of the surety on builders' bonds, as will appear by reference to the following cases in point: See *Beers v. Wolf,* 116 Mo. 179, 22 S. W. 620; *Reissaus v. Whites,* 128 Mo. App. 136, 106 S. W. 603; *School District v. Green,* 134 Mo. App. 421, 427, 114 S. W. 578; *Utterson v. Elmore,* 154 Mo. App. 646, 136 S. W. 9."

But the changes evidenced by the list in controversy were not in excess of 10 per cent. of the penal sum of the bond. The list made changes in the plans and showed some items which added thereto and to the contract price $509.58, and others which made omissions therefrom and deducted from the contract price $309.40. The total of these two amounts was the "amount of money involved" in the changes; notice of which, in every instance, was required by the bond to be given the company. But, as it costs nothing to make changes in the plans omitting requirements in the contract, and, as it is only such changes as add thereto which cost, it is the cost of the latter, less the cost of the former, which goes to make up the "aggregate" cost of the changes in the list, to make which, when such cost exceeds 10 per cent. of the penal sum of the bond, the consent of the company is a condition precedent. We say it is the cost of the changes which add to the contract price, less those which deduct therefrom, which

goes to make up the "aggregate" cost of the changes, of which the company must have notice and consent thereto as a condition precedent to the right to make them; for if, for instance, a door to cost $25 is left off the plans and another is agreed upon at a cost of $50, the actual cost or "aggregate" cost of making the changes cannot be other than $25. Or, if a window to cost $10 is left off and tiling added to cost $40, while the money involved by such changes is $50, it is clear the "aggregate" cost of the changes is $30. And so contract and bond construed together means that, when lists of changes are agreed on from time to time between the obligee and the principal in the bond, although the "money involved by the changes" evidenced thereby may in any one or all the lists together exceed 10 per cent. of the penal sum of the bond, if the costs of the changes do not in the aggregate amount to a sum equal to 10 per cent. of the bond, while notice to the company of the changes is necessary, its consent to make them is not a condition precedent to the right so to do. By "aggregate" cost of the changes is meant their cost as a whole; i. e., their cost less the cost of deductions. For it is said in *Receiver v. Hayward,* 35 N. B. 453:

"In order to arrive at the aggregate value of the property of a deceased person under 59 Vict. c. 42, sec. 4, the Succession Duty Act of 1896, the debts owed by the estate should be deducted. The word 'aggregate' signifies no more than if the section had said 'the whole value.' "

Tested by this rule, neither in the list of February 18th, nor in the list of March 3d, nor the supplemental agreement of March 5th, nor in any other list to which our attention has been called, nor in them all together does it appear that the cost of the changes in the plans

aggregate to exceed 10 per cent. of the penal sum of the bond. This for the reason that the aggregate cost of the changes in the list of February 18th was $509.58, less $309.40, or $200.18; those in the list of March 3d $40.18, less $36, or $4.18; those in the supplemental agreement of March 5th $452.16, less $324.40, or $127.76; in all, or in the "aggregate," $332.12—as near as we can figure it, being unaided by counsel.

We are therefore of opinion, assuming that the consent of the company thereto was a condition precedent to the right to make changes in the plans "when the cost of the changes  *  *  *  shall in the aggregate amount to a sum equal to 10 per cent. of this bond," that the changes made as evidenced by any one or all of the lists complained of did not aggregate that sum, and hence the judgment of the trial court is right, unless reversible upon other grounds. And counsel contend it is, because, they say, the bond provides:

"*  *  *  If the obligee default in the performance of any matter or thing in this instrument, or in said contract agreed or required by the obligee to be performed, the company shall thereupon be released from all liability hereunder."

And the contract:

"Payments on the work shall be made from time to time as the work progresses upon the architect's certificate that said amounts have become due and at no time until the completion will they be made to exceed 85 per cent. of the value of work finished and in place at the date of each."

And as the facts are that those payments did exceed 85 per cent. of the value of the work finished and in place at the date of each payment, that defendant was released from

liability upon the bond. Or, in other words, that a compliance with said stipulation in the contract was a condition precedent to the right to recover on the bond. Assuming such to be a condition precedent, it does not follow that a failure to perform it will defeat a recovery on the bond *in toto*, but only to the extent defendant has been injured by a failure to perform.

In *School District No. 1 v. McCurley*, 92 Kan. 53, 142 Pac. 1077, the court said:

"A marked distinction is recognized by many of the courts as to the application of the rule as between contracts of an accommodation surety and the contract of a paid surety. As to the contracts of an accommodation surety made dependent upon a condition precedent, the courts all agree that the strict letter of the contract will be enforced; but, as to the contract of a paid surety, many of the courts, especially in the later decisions, inquire whether the surety was injured by the default of the condition, and, if so, they enforce it only to the extent of the injury. In *Hull v. Bonding Co.*, 86 Kan. 342, 120 Pac. 544, it is held that the rule that sureties are favorites of the law does not apply to corporations engaged in the business of furnishing bonds for profit."

In *American Surety Co. v. Scott & Co.*, 18 Okla. 265, 90 Pac. 7, in the syllabus it is said:

"Where in the builder's contract and bond provision is made that estimates shall be made by the architect on the first and fifteenth days of each month, and that payments shall be made to the contractors according to the estimate, less fifteen per cent., and where the owners, in order to accommodate the contractors in procuring material and labor, advance certain amounts between the periods, at which estimates are made, and where such amounts are taken into consideration and deducted from the amount due at the time of, and under the conditions of, the next estimate, and where such amounts so advanced

are applied upon the labor, material, and freights, and where no loss accrues to the surety or contractors by reason of such advances, *held,* that such advances are not a violation of the contract and will not be held to avoid the conditions of the bond."

And in the body of the opinion:

"It is contended by counsel that this was a violation of the terms of the contract. No loss occurred, but, as a mere accommodation, to enable the contractors to proceed with the purchase of material and the employment of men, these advances were made. Certainly, no injury was caused thereby, and we cannot see how it can be construed into such a violation of the contract as would avoid the condition of the bond."

And there is no evidence reasonably tending to prove that defendant was injured by a failure to perform said stipulation in the contract. Upon this point the evidence discloses that, whenever material was delivered on the ground for use in the building and before the work was finished and in place, the obligee would pay the bill for the material at a discount of 2 per cent., which he would divide with Binning; that the money so paid was taken into consideration and accounted for at the next estimate, and that this was done to accommodate Binning and to promote the work. The evidence further discloses that this was done from time to time as the work progressed, and that, when Binning quit, the construction work and material on the ground amounted to about three-fourths of the total price of the building. But, as no attempt was made to prove how much material was thus paid for and left on the ground at the time Binning quit, we have no way of determining whether defendant was injured by this course of conduct or not. Counsel say defendant was so injured, and from a mass of data invite us to saw how

and to what extent; but such it is impossible to do, and as the burden of proof was upon the defendant to establish the injury, and such he has not done, this point is ruled by *American Surety Co. v. Scott & Co., supra.*

Finding no error in the record, the judgment of the trial court is affirmed.

All the Justices concur.