ALICE H. RULE and C. D. RULE, Appellants, v.
R. H. ANDERSON and NATIONAL SURETY
COMPANY, Respondents.

**Kansas City Court of Appeals, December 4, 1911.**

1. **SURETY: Building Contracts: Forfeiture: Notice.** A surety
   bond, given for hire to insure the fulfillment of a building
   contract, is not forfeited by failure to give notice of alterations
   in the building as required by the contract, where the changes
   were trival and made at small cost.

2. ———: ———: ———. Immaterial variations and unsub-
   stantial deviations, with respect to the performance of the con-
   tract assured, which do not prejudice the right or encroach
   upon the liability of the surety, will not operate as a discharge
   of the surety where the surety is engaged in the business of
   suretyship for hire.

3. ———: ———: ———. As a general rule, a surety has a
   right to stand on the strict terms of his contract, but where
   the surety has received a consideration in the way of hire, the
   contract is somewhat in the nature of an indemnity and techni-
   cal and immaterial departures from the letter of the contract
   by the obligee, are disregarded.

4. ———: ———: **Execution by Principal.** The rule, that
   a bond to secure the performance of a contract, which recited
   that it is executed by the principal and another as surety, is
   void as to the surety if not signed by the principal, has no
   application to a contract of indemnity.

5. ———: ———: ———. A surety company that collects
   and retains premiums for a bond, and treats the instrument
   as properly executed until a loss occurs, cannot then repudiate
   liability because the bond was not signed by the principal.

6. ———: ———: **Waiver of Notice.** The provision of a bond
   requiring notice of any extension of time for the completion
   of the work under the contract may be waived and when the
   manager of the surety company's office in the city where the
   bond was made, is informed of the conduct of the contractor
   and the true situation as to the completion of his contract
   within the time allowed, notice is waived.

Appeal from Jackson Circuit Court.—*Hon. John G.
Park*, Judge.

REVERSED AND REMANDED.

*Boyle & Howell* for appellants.

(1) The finding and judgment of the court should have been for the plaintiffs. (2) The court erred in giving its declaration and conclusion of law numbered 3, page 24 appellants' abstract of record. Boppart v. Surety Co., 140 Mo. App. 675; Martin v. White, 128 Mo. App. 117; Beers v. Wolf, 116 Mo. 179; Risse v. Planing Mill Co., 55 Kas. 518; Martin v. White, 128 Mo. App. l. c. 123; Smith v. Molleson, 148 N. Y. 241; Fuller Co. v. Doyle, 87 Fed. 687; Am. and Eng. Ency. of Law, 494-5-6. (3) Under the court's findings of fact the judgment of the court should have been for plaintiffs.

*Botsford, Deatherage & Creason, Frank Hagerman, Kimbrough Stone* and *Ingram D. Hook* for respondents.

(1) The court below found changes and alterations in the contract were made by the obligee and the principal in the bond—that those changes were important and material and were made without notice to or the knowledge or consent of the surety. Liability on the bond was thereby released. Eldridge v. Fuhr, 59 Mo. App. 44; Burnes Estate v. Fidelity & Deposit Co., 96 Mo. App. 467; Lumber Co. v. Gates, 89 Mo. App. 201; Reissans v. Whites, 128 Mo. App. 135. (2) The judgment was for the right parties on other grounds in addition to those assigned by the court below and this court is justified in affirming on such other grounds. Turner v. Anderson (Mo. Sup.), 139 S. W. Rep. 180; Joy v. Cale, 124 Mo. App. 569; R. S. 1909, sec. 2083. (3) Such other grounds for affirming the judgment are: The bond was not signed by the principal and therefore not binding on either the principal or surety. Baum v. Jetmore, 70 Mo. 228; Gay

v. Murphy, 134 Mo. 98; St. Louis Ass'n v. Obert, 169 Mo. 507. The bond required immediate notice in writing to the surety of any default by the principal. The contract required the work to be finished by November 20, 1904. It was not completed at that time and notice was not given to the Surety Company, until January 21, 1905. This was not immediate notice and by reason thereof all liability on the bond ceased. Savings & Loan Ass'n v. Trust Co., 73 Mo. App. 161; Hurley v. Fidelity Co., 95 Mo. App. 88; 32 Cyc., p. 176, par. 2 and notes, 59-60-61.

JOHNSON, J.—This suit is on a builder's bond executed by defendant, a surety company, as a surety for hire. A jury was waived by agreement and, after hearing the evidence, the court made and filed findings of fact and conclusions of law on which it rendered judgment for the defendants. Plaintiffs appealed.

The facts of the case thus may be stated. Plaintiffs are husband and wife and in August, 1904, acting for himself and as the agent of his wife, the husband entered into a contract with defendant Anderson by the terms of which Anderson, who is a contractor, agreed to do the carpenter work and provide the materials therefor for an apartment building to be erected on lots in Kansas City owned by Mrs. Rule. The work was to be done according to plans and specifications in the office of the architect employed by plaintiffs and the contractor was to be paid $4,102.25 for the work at stated times and on the architect's certificates. November 20, 1904, was fixed as the date for the completion of the work.

Among other provisions of the contract, which was in writing, were the following: "Should the proprietor, at any time during the progress of the said works, require any alterations of, deviations from, additions to, or omissions in the said contract, specifications or plans, he shall have the right and power to

make such change or changes, and the same shall in no way injuriously affect or make void the contract; but the difference for work omitted, shall be deducted from the amount of the contract, by a fair and reasonable valuation; and for additional work required in alterations the amount based upon same prices at which contract is taken shall be agreed upon before commencing additions, as provided and hereinafter set forth in article number six; and such agreement shall state also the extension of time (if any) which is to be granted by reason thereof.''

''No new work of any description done on the premises, or any work of any kind whatsoever shall be considered as extra unless a separate estimate in writing for the same, before its commencement, shall have been submitted by the contractor to the superintendent and the proprietor, and their signatures obtained thereto, and the contractor shall demand payment for such work immediately it is done. In case of day's work, statement of the same must be delivered to the proprietor at latest during the week following that in which the work may have been done, and only such day's work and extra work will be paid for, as such, as agreed on and authorized in writing.''

Defendant, the National Surety Company, is a New York corporation engaged in the business of guaranteeing the fidelity of employees and contractors and authorized to transact business in this state. It maintains an office in Kansas City in charge of a district manager, and on October 4, 1904, at the request of Anderson, executed a bond at that office by the hand of the manager by which, in consideration of a premium paid by Anderson, it undertook to guarantee the performance of Anderson's contract with plaintiffs. The building contract was referred to and made a part of the bond.

Among the stipulations of the bond were the following:

Rule v. Anderson et al.

"The obligee shall at all the times and in the manner specified in said contract, perform all the covenants, matters and things required to be by the obligee performed; and if the obligee default in the performance of any matter or thing in this instrument, or in said contract agreed or required to be performed by the obligee, the company shall thereupon be relieved from all liability hereunder.

"If said principal shall in any manner default in the performance of any matter or thing in said contract specified to be by said principal performed, or in the event of said principal abandoning the work provided by said contract to be done by said principal, the obligee shall immediately so notify the company, and thereafter the company shall have the right at its option to assume and sublet said contract and to proceed thereunder as if no default or abandonment had occurred; and if the company elect to assume said contract, all moneys agreed therein to be paid said principal and which at the time of the default be due the principal shall thereupon become payable to the company, and shall be paid to it, anything to the contrary in said contract notwithstanding . . .

"If any changes or alterations by the principal and obligee be made in the terms of said contract or in the plans or specifications for the work mentioned in said contract, the obligee shall immediately so notify the company of such changes or alterations giving a description thereof and stating the amount of money involved by such changes or alterations. . . .

"None of the conditions or provisions contained in this instrument shall be deemed waived by the company unless the written consent to such waiver be duly executed by its president or vice-president and its seal be thereto affixed and duly attested; nor shall this instrument or any rights thereunder be assignable unless with like consent duly executed and attested as aforesaid . . .

"All notices and other evidence required by this instrument to.be furnished by the obligee to the company shall be in writing and shall be forwarded by registered letter addressed to the company at its principal office in the city of New York."

The work was not completed until January, 1905, and plaintiff failed to give written notice of this default of Anderson until January 21, 1905. In answer to this notice, defendant's vice-president in New York wrote plaintiffs as follows:

"Referring to your communication of the 21st inst., concerning your contract with Mr. R. H. Anderson of Kansas City, the contract required the completion of the work on or before November 20th, 1904. It appears from your letter that the work was not completed at that date, but in fact was being continued up to about the date of your letter. It is assumed that Mr. Anderson was given an extension of time within which to complete; a careful examination of our papers fails to disclose any assent on our part to any such extension—if one has been granted. without our assent, all liability on our part to you ceased under the bond at the time such. extension was granted. If no extension was granted, then you have not complied with the conditions of the bond on your part to be performed, in that you knew on November 20th, 1904, and previously to that date, that Mr. Anderson had not completed the work and did not intend to complete it by that date, and under the conditions of the bond it was your duty to forward in the manner and at the time required by the bond, written. notice to us to that effect. This was not done, and for your omission so to do, under another condition of the bond, it was agreed that all liability should cease.

"We regret that you are placed in the position of being without security for that portion of the work which you say remains uncompleted, but the responsibility for this condition does not rest with us."

The court found, and the finding is supported by substantial evidence, that "defendant Anderson began the carpenter work and had erected a considerable part of it on November 1, 1904, at which time plaintiffs had paid him $1000 under architect's certificates. Believing that Anderson would not complete his work on the 20th, plaintiff Charles D. Rule, about November 1, visited the office of the surety company in Kansas City, Missouri, and interviewed Mr. R. W. Stewart, person in charge and southwestern manager of said defendant's business, and an agent authorized to accept premiums, pass on and approve risks and execute and deliver policies of guaranty insurance for said defendant. Mr. Rule told Mr. Stewart that he was dissatisfied with the rate of progress that Anderson had been making and asked Mr. Stewart to "hustle up" Anderson. Mr. Stewart promised to write or telephone Mr. Anderson and use his best endeavors to obtain a performance of the contract on Anderson's part.

November 10, 1904, plaintiffs paid Anderson the fifth architect's certificate for $200 and on December 3, 1904, they paid him ninety dollars "on the next certificate."

On or about December 1, 1904, plaintiff Charles D. Rule visited the surety company's office again and inquired of Mr. Stewart what arrangements should be made about the pay roll of the carpenters. Mr. Stewart requested said plaintiff to pay the carpenters himself. On December 10, 1904, plaintiffs paid Anderson "on next certificate" $134.40, on December 17, 1904, $118.60, on December 24, 1904, $131.40 and on December 31, 1904, $45.20.

We quote further from the findings of fact:

"The court finds that '2 inch' lumber in this vicinity is under the universal custom 1¾ or 1 7-8

Rule v. Anderson et al.

inches thick, and that the lumber used in this building conformed to specifications.

"The court finds that the following requirements of the specifications have been omitted from the construction of the building by agreement between plaintiff's architect and defendant Anderson, without the knowledge of the surety company.

"Wooden beams over bay windows (iron
    beams supplied by plaintiffs) ........$  5.00
No. 2 lumber used on first floor instead
    of No. 1, difference ............... 10.00
False ceilings under front porch omitted 25.00
10 sq. yds. gravel roof used instead of
    "Carey" difference ............... 9.00
Scotia on rear steps and kitchen moulding
    omitted without leave ...:........ 5.00
21 feet of metal corner beams omitted .. 1.05

"The court finds that there were the following additional items of material and labor furnished by defendant Anderson at plaintiffs' request not required by the plans and specifications, and of which the surety company had no knowledge:

"Labor laying extra felt between boards on
    2nd and 3rd floors .................$  5.00
Picture moulding on chimney breasts .... 1.00
Casing on transon openings in bathroom
    closet on 3rd floor ................ 2.50
Scuttle in hall closet on 3rd floor ........ 1.50
Countersinking Escutcheons on sliding
    doors ............................ 3.00
Placing boards behind sinks ............ 1.50
Wicket doors in lattice-work .......... 1.75

                        $ 16.25"

The declaration of law on which judgment was rendered for defendants is as follows:

"The court further declares the law to be that the omission of the wooden beams over the bay windows, the use of No. 2 lumber on the first floor instead of No. 1, the omission of the false ceilings under the front porch, the substitution of eighteen yards of gravel roof instead of Carey roofing involving in the aggregate an agreed reduction in the price of the building of forty-nine dollars, and the furnishing of the labor for laying the extra felt, the furnishing and fastening of extra picture moulding and the casing on transom openings, the cutting and construction of a scuttle on the third floor, the countersinking of escutcheons, the placing of boards behind sinks and the installation of wicket doors in lattice work, involved the undertaking by Anderson of extra and additional work worth sixteen dollars and twenty-five cents, that all of these were material and important changes and alterations, and that, inasmuch as defendant surety company knew nothing of any of these things, the bond has been forfeited under condition five of the bond, and plaintiffs cannot recover. [Burnes Estate v. Fidelity Company, 96 Mo. App. 467; Fullerton Lumber Co. v. Gates, 89 Mo. App. 201.]"

Plaintiffs alleged in the petition and introduced evidence tending to support the averments that Anderson had defaulted in the performance of the building contract in a number of specified particulars and that the total loss to plaintiffs on account of such breaches amounted to $1386.48. Though the manager of the Surety Company at Kansas City had actual knowledge of the breach by the contractor of his obligation to complete the work by November 20, the company did not offer to return the premium paid by plaintiffs, nor disclose its purpose of declaring a forfeiture of the bond but, on the contrary, the manager advised the very course of conduct plaintiffs afterward pursued.

The answer of the Surety Company interposed a number of defenses, including the one sustained by the

trial court. First we shall dispose of that defense. As found by the court the deviations in the building from the plans and specifications consisted of three substitutions of one kind of material for another which reduced the contract price twenty-four dollars; of the omission of a false ceiling under the front porch, a reduction of twenty-five dollars, and of seven small "extras" of the total value of sixteen dollars and twenty five cents. The term "changes or alterations in the contract or plans and specifications" as used in the fifth paragraph of the bond would include any omissions, substitutions or additions agreed upon by the owners and contractor and the duty was imposed on plaintiffs by that paragraph of giving the Surety Company immediate written notice of variations from the plans and specifications. This failure of plaintiffs to give notice of the changes made pursuant to their agreement with the contractor presents the question of whether or not the surety is justified in declaring a forfeiture of the bond.

The contract for the improvement provided in the third paragraph for the making of changes in the plans and specifications regardless of whether such changes might be substantial or trivial, and in the sixth paragraph a methed was provided by which alone the contractor would be entitled to compensation for extra work done by him. This method was not followed with respect to the seven items of "extras" under consideration and we would be justified by the evidence, as a whole, in saying that these extras were furnished, not under the contract, but pursuant to subsequent independent agreements between plaintiffs and the contractor, but we prefer to base our decision of the questions now before us on other grounds and, for the purposes of our decision, shall assume that the extra work, amounting to sixteen dollars and twenty-five cents, was done under the original contract and pursuant to the provisions of the third and sixth para-

graphs thereof. Since the contract authorized changes in the plans and specifications, and since the contract was expressly made a part of the bond executed by defendant Surety Company, it follows that the surety must be held to have agreed that alterations might be made in the building regardless of whether such alterations were substantial and material to the risk of the surety, or were trivial and immaterial to such risks. Indeed, the fifth paragraph of the bond recognizes the *right* of the obligees to make any changes or alterations in the building and having thus stipulated, the surety is in no position to say that plaintiffs violated the terms of the bond in altering the plans and specifications during the progress of the work. The only ground of complaint the surety could have would be of the failure of plaintiffs to give notice in accordance with the provisions of the fifth and ninth paragraphs. Undoubtedly the stipulation for notice is reasonable, was one the surety had a right to incorporate in the bond, and if we believed the alterations in question reasonably might be thought to have materially affected the risk, we would hold, as did the trial court, that the failure of plaintiffs to give the prescribed notice constituted a ground of forfeiture which, in the absence of proof of waiver, should be enforced.

But we find no room in the facts of the case for the indulgence of a reasonable conclusion that the few trifling alterations in the plans and specifications which involved a net diminution of the contract price of about thirty three dollars could have had an appreciable effect on the risk of the surety, and we come to the question of whether or not the surety may invoke the rule frequently applied in cases of voluntary suretyship, that where changes made without the consent of the surety affect the identity of the building contract, the surety will be discharged, notwithstanding the fact that such changes did not increase or diminish the risk of the surety. That rule, we are persuaded, should

obtain only in cases of voluntary suretyship and not in cases such as the present, where the surety is engaged in the business of suretyship for hire. In the latter class of cases the rule that should be followed is aptly stated by Judge NORTONI in Martin v. Whites, 128 Mo. App. l. c. 123, as follows: "In the matter of acts and omissions with respect to the performance of the contract assured, mere immaterial variations and insubstantial deviations which do not, in any manner, prejudice the right or encroach upon the liability of the surety, will be insufficient to operate a discharge."

The deep solicitude of the law for the welfare of voluntary parties who bound themselves from purely disinterested motives never comprehended the protection of pecuniary enterprises organized for the express purpose of engaging in the business of suretyship for profit. To allow such companies to collect and retain premiums for their services, graded according to the nature and extent of the risk, and then to repudiate their obligations on slight pretexts that have no relation to the risk, would be most unjust and immoral and would be a perversion of the wise and just rules designed for the protection of voluntary sureties. The contracts of surety companies are contracts of indemnity and, as such, fall under the rules of construction applicable to contracts of insurance. Since they are prepared by the companies and generally abound with conditions and stiplations devised for the restriction of the obligation assumed by the company, such stipulations must not be extended to favor limitations providing for forfeiture of the contract. They must be strictly construed and no unreasonable right of forfeiture should be allowed.

Recently this court, speaking through BROADDUS, P. J., in the case of Boppart v. Surety Co., 140 Mo. App. l. c. 683, gave voice to the views just expressed:

"The general rule is that a surety has the right to stand on the strict terms of his contract. This rule

is especially applicable to voluntary sureties who have no interest in the subject-matter of the contract. Where however the surety has received a consideration in the way of hire the contract is somewhat in the nature of an indemnity. Having enjoyed compensation for his undertaking, it is the policy of the law when properly interpreted, to disregard technical and immaterial departures from the letter of the contract on the part of the obligee. This modification of the rule is almost universally applied to contracts of insurance. The obligations of a surety company, while not strictly insurance, partakes more or less of that character. They clothe their obligation with all sorts of conditions, for the violation of any of which, they provide for discharge from liability altogether, notwithstanding they have reaped the benefits of the obligation. They stand on a different footing from an ordinary or straight obligation, uncoupled with any conditions whatever, except those provided for in the letter of the contract itself.''

In the light of this wholesome doctrine we are constrained to hold that the true intent and purpose of the provisions for notice in the bond were that the surety company should be given notice of any change or alterations that affected the risk in any degree and that the obligees were not required to give notice where the alterations were not material to the risk.

It is clear from what we have said that the trial court erred in pronouncing the bond forfeited on the ground of changes in the plans and specifications and we pass to other defenses not sustained in the circuit court but pressed upon our attention in the briefs of defendants.

The bond recites on its face that the contractor is the principal obligor and the Surety Company his surety, and contemplates that the contractor should sign the instrument. When the bond was introduced in evidence it appeared that probably through some over-

sight the contractor had failed to attach his signature. No point was made by defendants in the trial court on account of this omission and we could dispose of defendant's objection on that score argued in the briefs by saying that the objection is not before us for consideration, but we shall consider the question as one properly raised. The rule in this state is that a bond given by a contractor to secure the performance of a contract which recites that it is executed by the contractor as principal and by another as surety is void as to the surety if not signed by the principal. [Gay v. Murphy, 134 Mo. 98; Bunn v. Jetmore, 70 Mo. 228; St. Louis Association v. Obert, 169 Mo. 507.]

But manifestly this rule has no application to a contract of indemnity such as we have found the present contract to be. We cannot give our sanction to the idea that the Surety Company may collect and retain the premium charged for the bond; treat the instrument as one properly executed until a loss occurred and then repudiate liability on the ground that the bond was not signed by the contractor.

Finally it is argued by the surety that the failure of plaintiffs to give written notice of the breach of the building contract by the contractor in respect of the stipulation relating to the time in which the improvement should be completed constituted a forfeiture of the bond. That point is sufficiently answered by the observation that this ground of forfeiture was one the surety could waive, and we hold that the conduct of the manager of the company's office at Kansas City, as depicted in the evidence of plaintiffs, was a waiver of the right to forfeit the contract on that ground.

The knowledge of the manager of the true situation was the knowledge of the company and his acquiescence in the course pursued by plaintiffs was the acquiescence of the company whose *alter ego* he was. The company had no right to encourage plaintiffs in

the belief that a forfeiture would not be invoked and then when it became too late for notice to be given, declare the contract forfeited. The judgment is reversed and the cause remanded. All concur.