ST. MATTHEW'S EVANGELICAL LUTHERAN CHURCH *v.*
UNITED STATES FIDELITY & GUARANTY CO.

1. EVIDENCE—BONDS—RECITALS IN INSTRUMENT DISPENSE WITH
PROOF OF CORPORATE EXISTENCE.

In an action against the surety on a building contractor's
bond, where the bond by reference to the contract de-
clared the contract to be a part of the bond, a recital in
the bond that the contractor is a corporation binds de-
fendant to such fact, and plaintiff is relieved from prov-
ing execution of the contract and the corporate existence
of the contractor.

2. CORPORATIONS—MISNOMER—IDENTITY—VARIANCE.

Where defendant surety, at the time of signing the bond,
failed to object to the use of incorrect corporate names
of the owner and contractor in the contract which by
reference became part of the bond, it is too late to ob-
ject thereto, in an action on the bond, on the ground
that there is a want of identity arising out of variance
in names.

3. NAMES — MISNOMER WILL NOT DEFEAT RECOVERY IF IDENTITY
APPEARS.

The misnomer of a person or corporation in a written
instrument will not defeat a recovery thereon, if the
identity sufficiently appears from the name employed in
the writing or is satisfactorily established by proof.

4. PRINCIPAL AND SURETY—BONDS—NOTICE—WAIVER.

Negotiations with plaintiff by the surety after the latter
had been notified that the building contractor had breached
his contract, *held*, to waive the time fixed in the bond
within which action thereon must be brought.

5. PLEADING—COURT RULES—AFFIRMATIVE DEFENSES—WAIVER.

Circuit Court Rule No. 23, requiring notice of affirmative
defenses, has no application to a waiver by defendant,
saving plaintiff's right to bring suit.

6. PRINCIPAL AND AGENT—AUTHORITY OF AGENT.

Where defendant, after receiving notice of the building

As to mistake in name or description of corporation as af-
fecting judgment by default against it, see note in L. R. A.
1916F, 728.

contractor's default, notified plaintiff that the matter had been referred to defendant's branch office, representatives sent by said branch office were its agents and plaintiff had a right to rely on their acts and authority as such.

7. PRINCIPAL AND SURETY—NOTICE OF DATE OF DEFAULT—WAIVER. Where defendant did not object, at the time notice of the building contractor's default was given, that it failed to state the time of the default, as required by the bond, it is too late to object after it acted upon the notice and brought into play the right of plaintiff to complete the contract and look to the bond for indemnity.

Error to Berrien; White (Charles E.), J.   Submitted January 17, 1923.   (Docket No. 122.)   Decided March 22, 1923.

Assumpsit by St. Matthews Evangelical Lutheran Church against the United States Fidelity & Guaranty Company for the amount of a contractor's bond. Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*Stratton & Evans* (*James Percival Pio*, of counsel), for appellant.

*H. S. Gray* and *Cady & Andrews*, for appellee.

WIEST, C. J.   The Evangelical Lutheran St. Matthews Church, a corporation, wanted a new church edifice erected at Benton Harbor, and, under the name of the "Ev. Luth. St. Math. Congregation," on June 24, 1919, by its officers, entered into a contract with the "Singer Ch. & Con. Co.," of Chicago, for its construction.   Defendant became surety for the contractor, binding itself to "St. Matthews Evangelical Lutheran Congregation" of Benton Harbor for performance of the contract by its principal.   The bond provided that the surety should not be liable for any default of the contractor unless plaintiff should promptly, and not

later than 30 days after any default, deliver written notice thereof with a statement of facts to defendant's office in the city of Baltimore.   The defendant was given the right, in case of default of the contractor, to assume and complete or procure completion of the contract and be subrogated to all the rights of the contractor.   The liability of defendant was limited to $6,750, and it was stipulated that no suit on the bond could, in any event, be instituted later than March 31, 1920.   The contractor commenced the work early in July, 1919, and abandoned the job about Thanksgiving time the same year, leaving a great part of the work undone.   Notices of such abandonment and default were mailed defendant and the contractor by plaintiff on December 17, 1919, with the request to defendant to indicate whether it desired to assume and complete the contract.   To this communication defendant replied, by letter, dated December 31, 1919, that the matter was being referred to its Chicago office, with the request to give the matter the necessary attention and promised to communicate with plaintiff again after hearing from its Chicago manager. January 3, 1920, Eugene P. Kealy, styling himself superintendent of defendant's claim department, wrote plaintiff from Chicago that its letter of December 17, 1919, to defendant at Baltimore had been forwarded to his office for attention, and "we are investigating the matter and will take it up further with you in a very short time."

February 3, 1920, Mr. Kealy wrote plaintiff:

"One of our representatives will be at Benton Harbor to take this matter up with you further either the last part of this week or the first of next week."

About January 15, 1920, a Mr. Rattner was in Benton Harbor making inquiry as to the work done and what it would cost to complete the job, and stated he would go to the home office and would advise plain-

tiff, or come again, and let plaintiff know what to do. About February 9, 1920, Mr. Rattner was in Benton Harbor again, met plaintiff's board of trustees, and building committee and the architect, and stated that defendant would not complete the work but would let plaintiff do so.' Thereupon plaintiff completed the work, expending far more than the penalty of the bond in doing so.

February 25, 1920, Mr. Kealy, by letter to Mr. Gray, attorney for plaintiff, asked to be advised what arrangements plaintiff had made for completion of the church building.    February 27, Mr. Gray, by letter, informed Mr. Kealy that the plaintiff had let a contract for the completion of the building.    October 30, 1920, by letter, Mr. Kealy asked to be advised of the status of matters.    November 9, 1920, Mr. Gray, by letter, advised Mr. Kealy that the building had been completed, without change from the original plans, at a total cost, including the $16,557.80 paid the Singer Chimney Company, of $52,005.76, and stated:

"The contract price was $26,818, leaving the excess which the local church had to pay amounting to $25,187.76, so even after your bond of $6,750 is paid in full, the local church will sustain a very substantial loss."

November 17, 1920, Mr. Kealy, by letter, asked Mr. Gray for an itemized statement of the total amount of the work, and stated:

"If you can get together all of the data on this contract and will advise us when it will be convenient for you for a representative of this office to go to Benton Harbor, we will send some one to take the matter up with you."

The statement asked for was prepared and sent to Mr. Kealy.    February 7, 1921, Mr. Kealy wrote Mr. Gray the following letter:

"Answering your letter of February 1st, I beg to advise that, pursuant to our agreement with the Singer Chimney Company, our principal under the bond, we referred this claim to them, and their counsel, Mr. Pio, has advised us that, in his opinion, there is no liability on the part of the surety company in this matter and therefore instructs us not to make any payment on this claim, and furthermore, that he will, on behalf of his client, undertake to defend any action which may be brought against this company under the bond.      Under the circumstances, any payment by us at this time would imperil any right of reimbursement we might have against the principal.

"I would, therefore, suggest that you take this matter up direct with Mr. James P. Pio, 39 South LaSalle street, Chicago, who represents the principal."

May 14, 1921, plaintiff brought this suit to recover the penalty of the bond.      Defendant, under plea of the general issue, gave notice denying the corporate existence of plaintiff, claimed suit was not commenced within the period fixed in the bond sued on and that plaintiff failed to deliver to defendant, at its office in the city of Baltimore, notice of the contractor's default, and also gave notice of certain legal defenses hereinafter discussed.      At the trial defendant offered no evidence, and the court directed a verdict in favor of plaintiff for $6,750, the penalty of the bond.      The case is here by writ of error.

At the trial defendant admitted that the cost to plaintiff of completing the building exceeded the penalty of the bond.      The corporate name of plaintiff is The Evangelical Lutheran St. Matthews Church of Benton Harbor, Michigan.      We assume the correct name of the contractor to be Singer Chimney & Construction Company of Chicago, Illinois.      Defendant was summoned to answer the St. Matthews Evangelical Lutheran Church, and declared against as surety on the bond given by the Singer Chimney Company to St. Matthews Evangelical Lutheran Congregation,

and at the trial the declaration was amended to state plaintiff's correct corporate name.

Defendant claims that the obligee in the bond was not the one named by plaintiff in the summons and the original and amended declarations, nor the plaintiff corporation, and that the principal named in the bond was the Singer Chimney Company. The bond, by reference to the building contract, declared that contract to be a part of the bond as fully as if incorporated at large in the bond. This suit being brought upon the bond and not against the contractor, and the bond adopting, by reference, the building contract, defendant is in no position to insist that plaintiff must prove execution of the building contract and the corporate existence of defendant's principal in the bond. The recital in the bond given by defendant, that the Singer Chimney Company is an Illinois corporation, binds defendant to such fact, and we are not bothered with the thought that the Singer Chimney Company may be a copartnership or an individual. Recitals of fact, in a bond of this character, dispense with proof of the verity thereof. But, it is said that the building contract was with the Singer Chimney & Construction Company, and defendant's undertaking was not for any default of such a contractor but only for the Singer Chimney Company. The building contract, as stated before, and of necessity, is a part of the indemnity contract, and the defendant, at the time of giving the bond, had opportunity to object to the names employed to identify its principal and its obligee, and it is now too late to raise the objection. There is no occasion to halt justice in this case because of the careless manner in which the names of the plaintiff and the contractor appear to have been stated in the writings. Defendant, apparently, did not hesitate to go on the bond of the contractor because its name was given as the Singer Chimney

Company instead of the Singer Chimney & Construction Company, or because the bond was given to St. Matthews Evangelical Lutheran Congregation instead of the Evangelical Lutheran St. Matthews Church. Defendant then knew, perfectly well, for whom and to whom it engaged its suretyship and it is too late now to insist there is a want of identity arising out of variance in names. The identity of plaintiff and that of defendant's principal in the bond could not possibly have been in doubt at any time by. any of the parties, and such identity is not in doubt now. It is an old rule, and a sensible one, that the misnomer of a person or corporation in a written instrument will not defeat a recovery thereon, if the identity sufficiently appears from the name employed in the writing or is satisfactorily established by proof.

In the case of *Mayor and Burgesses of Lynne Regis,* concerning misnomer of corporations, 10 Coke, p. 471, the cases at that time were reviewed and the rule laid down that:

"The name of a corporation in grants or conveyances need not be *idem syllabis seu verbis,* but it is sufficient if it be *idem re et sensu.*"

In 7 R. C. L. p. 130, it is stated:

"The name of a corporation frequently consists of several descriptive words, and the transposition of them, or any interpolation, or omission, or alteration of some of them, may make no essential difference in their sense. And it is the general rule that in case of the misnomer of a corporation in a grant, obligation or written contract, if there is enough expressed to show that there is such an artificial being, and to distinguish it from all others, the body corporate is well named, although there is a variation of words and syllables."

See, also, *Culpeper Agricultural & Manufacturing Society* v. *Digges,* 6 Rand. (Va.) 165 (18 Am. Dec. 708); *Medway Cotton Manufactory* v. *Adams,* 10

Mass. 360; *Hoboken Building Ass'n* v. *Martin*, 13 N. J. Eq. 427; *Marmet Co.* v. *Archibald*, 37 W. Va. 778; *Thatcher* v. *National Bank*, 19 Mich. 196; *Walrath* v. *Campbell*, 28 Mich. 111. To pay heed to the objection here made would constitute no compliment to defendant's business acumen. The court was clearly right in all rulings upon the subject.

Was the time fixed for suit on the bond waived by acts of the parties? There is nothing sacred about such a stipulation in private contracts, and the party for whose benefit it was inserted may invoke or may waive it. Here it was waived by the acts of the defendant, if Kealy and Rattner were acting by authority of defendant in the premises. *McPharlin* v. *Fidelity & Deposit Co.*, 162 Mich. 141. Circuit Court Rule No. 23 relates to affirmative defenses and not to a waiver saving plaintiff's right to bring suit.

Had plaintiff a right to rely upon the acts of Kealy and Rattner? Business would come to a standstill if agency and authority, as apparent and as direct as here disclosed, could be defeated. Defendant's letter of December 31, 1919, acknowledged receipt of notice of default, advised plaintiff that the matter was referred to defendant's Chicago office with the request to give it necessary attention, and ended with:

"As soon as we hear from our manager at Chicago, we will communicate with you in the premises."

It is claimed that this reserved all authority to the home office and defendant was not bound by any action taken by its agents located at Chicago. We are not so impressed. The whole correspondence so clearly established the right of plaintiff to accept and rely and to act upon the authority of the Chicago office in the premises and to treat with Mr. Rattner that it would do violence to first principles to hold otherwise.

It is said in the brief for defendant:

"But for Kealy's authority they content themselves

with erecting an 'aerial,' in the hope that such authority will somehow come down from the heavens and save their case, and it didn't come."

The authority of Mr. Kealy did not come from the heavens; it came from Baltimore. Mr. Rattner's authority did not rest upon what he said about it. His advent in Benton Harbor was foretold and arranged for by Mr. Kealy. We need spend no time upon the claim that:

"Authority to make a contract does not carry with it authority to cancel, release, or modify it."

The agency here involved wholly related to the rights and remedies of plaintiff and defendant under an indemnity bond, after default of defendant's principal.

It is claimed the notice of default of the contractor, given by plaintiff to defendant, omitted to specify the date of the default, as required in the bond, and that this was fatal. It might have been a good point had defendant cared to raise it at the time of notice of default, but it lost all force when defendant acted upon the notice and, through its agents, brought into play the right of plaintiff to complete the contract and look to the bond for indemnity.

The errors assigned upon the admission of evidence disclose no reversible error.

The judgment is affirmed, with costs to plaintiff.

FELLOWS, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.